**KESSLER, DIGIOVANNI & JESUELE, LLP**
*Attorneys At Law*
773 Central Avenue
P.O. Box 2429
Westfield, New Jersey 07091-2429
(908) 232-2040
Fax (908) 232-0502
E-Mail: Kessler54@comcast.net
Website: www.kdjlawoffice.com

*Herbert J. Kessler*
*Vincent Jesuele**
* Member N.J. and N.Y. Bars

*Of Counsel:*
*Frank DiGiovanni*

June 8, 2010

United States District Court
District of New Jersey
**Attention: Hon. Patty Shwartz**
50 Walnut Street
Newark, N.J. 07101
**VIA E- FILING**

        Re: Van Doren v. Capital Research and Management Company d/b/a American Funds, et. al.
        Docket No.: 2:10-cv-01425; 2:10-cv-01460

Dear Judge Shwartz:

  Enclosed please find Plaintiff's opposition Brief to the Rule 12 (b)(6) motions of defendants. I served the within by e-mail upon my adversaries on June 7, 2010. However, since I am a new electronic filer, I was unable to e-file the Brief with the Court despite my attempts to do so on June 7, 2010 at 10:30 p.m.. With ther help of the Clerk's office, I am now able to e-file the same. Accordingly, I request leave to file the within out of time.

  Thank you for your considerations.

            Very truly yours,

            *Vincent Jesuele*

            Vincent Jesuele

/VJ
enc.
cc: Shannon Barrett, Esq. (Via E-Mail)
  J. Nicci Adams, Esq. (Via E-Mail)

**KESSLER, DIGIOVANNI & JESUELE, LLP**
**Vincent Jesuele, Esq.**
773 Central Avenue
P.O. Box 2429
Westfield, NJ  07091
(908) 232-2040
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Plaintiff,

CLEO VAN DOREN, formerly CLEO
DOUGHERTY
    vs.

Defendants,

CAPITAL RESEARCH AND
MANAGEMENT COMPANY D/B/A
AMERICAN FUNDS; TRADER JOE'S
COMPANY; PLAN COMMITTEE

CIVIL ACTION NO.: 2:10-CV-01425

**OPPOSITION TO MOTIONS TO DISMISS FILED PURSUANT TO**
**FED. R. CIV. PROC. RULE 12 (b)(6)**

Kessler, DiGiovanni & Jesuele, LLP
Attorneys for Plaintiff

*Vincent Jesuele*
By: Vincent Jesuele

Dated: 6/7/10

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF FACTS ... 1

LEGAL ARGUMENT

AS TO DEFENDANT, CRMC:

POINT ONE: DEFENDANT CRMC HAS NOT MET THE STANDARDS REQUIRED TO PREVAIL ON A 12 (b)(6) MOTION ... 3

AS TO DEFENDANTS , TRADER JOE'S AND PLAN COMMITTEE:

POINT ONE: PLAINTIFF IS ENTITLED TO RECOVER UNDER 29 USCA 1132 (a)(1)(B) ... 7

POINT TWO: THE ADMINISTRATIVE REMEDIES OF THE PLAN WERE NEVER TRIGGERED ... 7

POINT THREE: PLAINTIFF WAS NOT REQUIRED TO EXHAUST HER ADMINISTRATIVE REMEDIES BECAUSE SUCH WOULD HAVE BEEN FUTILE ... 9

## **CONCISE STATEMENT OF FACTS**

On and before May 29, 2008, plaintiff was a spousal beneficiary under defendant, Trader Joe's Company, Retirement Plan in the name of her then-husband, Timothy Dougherty. At the aforesaid time, the said account contained $173,980.00 in available funds. During this time, the account was being serviced and/or administered by Defendant, CRMC. An agreement exists between Trader Joe's Company and CRMC, which agreement is annexed to the movant's Motion to Dismiss hereto as Exhibit B.

That said agreement provided that CRMC, as the "Service Provider" agrees to "perform the recordkeeping and administrative services specified in the attached Exhibit A", and also indicates that "the Service Provider's responsibilities shall be limited to those specifically listed in Exhibits A and B".

These services included, inter alia, "preparation of certified copy of the trust statement", "processing participant withdrawals at the employer's direction, including applicable federal withholding and mandatory state withholding", "preparation of Form 1099R, and withholding tax remittance and reporting", "preparation and maintenance of participant loan documents and processing of loan distribution", "processing name, address and other indicative data changes submitted by the employer", "maintenance of amounts eligible for participant loans and/or hardship withdrawals", "maintaining beneficiary information".

On or about May 29, 2008, Defendant, CRMC, and/or one or more of the other named defendants, distributed the entire value of the aforesaid account to Timothy Dougherty based upon his submission of a Distribution Request which indicated, falsely, that he was unmarried. Defendant, CRMC, was, or should have been, aware that a prior submission of Timothy Dougherty had indicated that he was married.

1

Defendant, CRMC, prepared and provided the withdrawal forms to Timothy Dougherty, on American Funds letterhead, which provide details and instructions on the distribution including, inter alia, the proviso that if the participant is married, the distribution must be by Qualified Joint Survivor Annuity ("QJSA") unless spousal notarized consent is obtained.

Plaintiff was unaware of the subject distribution for more than 15 months until on or about July 8, 2009 during a telephone conversation with Trader Joe's.

## POINT ONE: DEFENDANT CRMC HAS NOT MET THE STANDARDS REQUIRED TO PREVAIL ON A 12 (b)(6) MOTION

The purpose of a motion under Federal Rule 12 (b)(6) is to test the formal sufficiency of the statement of the claim for relief in the Complaint. **Rutman Wine Company v. E.& J. Gallo Winery**, 8929 F. 2d. 729, 738 (9th Circuit, 1987). For a defendant to prevail on a motion to dismiss under Federal Rule 12 (b)(6), it must appear *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957), **Cervantes v. City of San Diego**, 5 F. 3d. 1273, 1274 (9th Circuit. 1993) [emphasis added]. It is not a procedure for resolving a contest about the facts or the merits of the case. **Scheuer v. Rhodes**, 416 U.S. 232, 236 (1974).

In the case at bar, Defendant, CRMC, alleges that it is not a proper party to the litigation because it is not a "fiduciary" as contemplated by ERISA. **29 U.S.C. section 1002 (21)(A)** provides, in pertinent part, that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises *any authority or control respecting management or disposition of its assets*...or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan" [emphasis added].

The Agreement annexed to the movant's motion as Exhibit B provides an overview of the obligations and requirements of CRMC in its position with regard to the Plan at issue.

At Exhibit A of that Agreement (page 6 of 9), Defendant CRMC agreed to provide the following: "preparation of certified copy of the trust statement", "processing participant withdrawals at the employer's direction, including applicable federal

3

withholding and mandatory state withholding", "preparation of Form 1099R, and withholding tax remittance and reporting", "preparation and maintenance of participant loan documents and processing of loan distribution", "processing name, address and other indicative data changes submitted by the employer", "maintenance of amounts eligible for participant loans and/or hardship withdrawals", "maintaining beneficiary information". In addition, as previously indicated, the forms completed by Timothy Dougherty were prepared by Defendant CRMC under the moniker "American Funds". On information and belief, the actual transmission of funds was made by Defendant CRMC to Timothy Dougherty.

No discovery has been exchanged to date between the parties save the electronic transmission between counsel of the Plan Documents and the Service Agreement at issue as to CRMC.

It seems axiomatic that many of the tasks detailed above involve discretion on the part of CRMC and its agents, servants and/or employees. By way of example, CRMC undertook to "process name, address and other indicative data". Presumably, this would include maintaining data on the marital status of plan participants. Yet, nowhere in the agreement does the Plan dictate the manner and means by which this data is to be collected, preserved or maintained by CRMC. Since the Plan documents clearly provide that in the event that a married participant seeks an "Optional Form of Benefit"[1] the participant's spouse is required to sign the documents, whether or not the

---

[1] See page 44 of the Trader Joe's Retirement Plan, annexed as an Exhibit to Movant Trader Joe's Motion to Dismiss, viz, "The election must be in writing, must clearly indicate that the participant is electing to receive his Plan Benefit under the Plan in a form other than the normal form, must indicate the form of benefit the Participant is selecting and must be signed by the Participant and/or the Participant's spouse, if any."

4

participant is married would appear to be a crucial piece of evidence. Since the Agreement at issue does not specify the manner and means by which this information is to be maintained, it is obvious that CRMC exercised "*authority or control respecting ... disposition of its [The Plan's] assets*". The method by which CRMC maintained the participant data, a discretionary activity in the context herein, permitted the wrongful distribution of the entirety of Timothy Dougherty's plan assets to the exclusion of his wife. Had CRMC chosen to set up its data collection system in a thorough and detailed fashion, it would have easily determined that prior submissions of Dougherty, presumably, indicated that he was married; that no subsequent divorce Order was on file; and that something was amiss when Dougherty, at distribution, claimed that he was single.

Similarly, CRMC's obligation to "process participant withdrawals" of necessity, required the exercise of discretion on the part of CRMC. Since CRMC prepared the withdrawal forms used by Dougherty and, presumably, all plan participants, it again seems clear that in the event that the forms were not completed properly or in their entirety, distribution would have been withheld or denied by CRMC. Such a withholding or denial, under any definition, would constitute control of the distribution of Plan assets.

Despite CRMC's protestations to the contrary, it seems clear on its face that the Agreement at issue, which sets forth the duties of CRMC vis-a-vis the Plan herein, vested CRMC with discretion and constituted the exercise of some degree of authority on the distribution of the plan assets. At the very least, proper discovery is necessary to ascertain the details of the establishment and maintenance of the participant data at issue.

In its Memorandum of Law, Defendant cites **In re Mushroom Transp. Co., Inc.**, 382 F. 3d. 325 (3rd Circuit, 2004), in support of the proposition that "mechanical, administrative responsibilities are insufficient to create fiduciary status." It should be noted that the "mechanical, administrative responsibilities" being commented upon in the cited case were "retaining the assets and keeping a record of their value" **Id at 347.**

Defendant, herein, did far more as detailed above and as required by the subject Agreement.

In **Board of Trustees of Bricklayers and Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.**, 237 F. 3d. 270 (3rd Circuit, 2001), an entity which received contributions from employers and awarded benefits to participants pursuant to an "administrative agreement" with the trustees of the union plan, moved on a 12 (b)(6) motion for dismissal. While the dismissal was granted by the District Court, it was reversed by the Court of Appeals. The Court wrote

> "[w]e are inclined to agree that ERISA does not consider as a fiduciary an entity such as a bank when it does no more than receive deposits from a benefit fund on which the fund can draw checks. The allegations in the amended Complaint, however, do not describe Wettlin's role as so circumscribed. Rather, the amended Complaint alleges that the Board delegated to defendant 'the day to day responsibility to control, manage, hold, safeguard and account for the Fund's assets and income. Moreover, the contract provides that Wettlin is to 'receive request for benefits from employees and take appropriate action therein'". **Id at 274**

The controversy herein is more akin to the scenario present in **Wettlin** than it is to the scenario present in the **Mushroom Transportation** case cited by Defendant.

Since the nature and extent of the contractual duties undertaken and carried out by CRMC are critical to a proper determination of whether it exercised discretion sufficient

6

to constitute fiduciary status, discovery is warranted, necessary and indispensable. As such, the matter is not ripe for a judgment on the pleadings and the motion of Defendant, CRMC must be denied at this juncture.

**AS TO DEFENDANTS, TRADER JOE'S AND PLAN COMMITTEE:**

### POINT ONE: PLAINTIFF IS ENTITLED TO RECOVER UNDER 29 USCA 1132 (a)(1)(B)

**29 U.S.C. 1132 (a)(1)(B)**, provides that "A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan."

In the case at bar, since plaintiff seeks to recover benefits due to her under the terms of the plan[2], she can unequivocally recover under **29 U.S.C. 1132 (a)(1)(B)** for the losses she has suffered and the benefits which she seeks. See **Massachussetts Mutual Life Insurance Company v. Russell**, 473 U.S. 134 (1985).

### POINT TWO: THE ADMINISTRATIVE REMEDIES OF THE PLAN WERE NEVER TRIGGERED

The administrative remedies of the subject Plan were never triggered in the case at bar. Accordingly, Plaintiff was not required to utilize and/or exhaust the same.

The Plan's administrative remedies are outlined at pages 60 through 63 of the Plan attached to Movant's Memorandum of Law.

A review of Section 13.1 (a) reveals that the remedies are triggered once the claimant has made a written application for benefits under the Plan and has received

---

[2] See Plan discussion at pages 42-44.

7

an "adverse benefit determination". Within ninety (90) days, the Plan is required to notify the claimant of "any adverse benefit determination" together with the "reason or reasons for the adverse benefit determination". At that juncture, the claimant may request that the committee conduct a full review and, thereafter, within sixty (60) days, the Committee is to make a "final benefit determination".

In the case at bar, however, as detailed above and in Plaintiff's Amended Complaint, she was unaware of the liquidation of her former husband's plan account for nearly fifteen months after the liquidation. When she became aware of the potential for a claim, the benefits had already been liquidated. The administrative remedies section of the plan is clearly and plainly tailored to the situation where a participant applies for a withdrawal of benefits from the plan and is denied, in whole or in part, from receipt of those benefits. This is a far cry from the situation at bar.

Defendant seeks to benefit from its errors by first arguing that plaintiff did not exhaust her administrative remedies. When plaintiff asserts that by the time she became aware of a potential claim, the benefits had already been wrongly paid out, defendant counters that there are no benefits to claim under the plan and, therefore, that plaintiff is out of luck.  This Janus-faced argument, which smacks of bad faith and whose aim is to deny plaintiff her rightful benefits,  should not be countenanced by This Court.

Since the clear and unambiguous language of the administrative remedy clause of the Plan makes it inapplicable to the dispute herein, the requirement of utilizing those remedies was never triggered. Additionally, it was the error of defendant which prevented plaintiff from detecting the pay out for many months. Defendant should not be rewarded by the Courts' acceptance of their argument that by the time plaintiff

learned of the error, no benefits existed under the claim. At that point, therefore, plaintiff's 1132 (a)(1)(B) claim had already been lost.

In the alternative, if the Court recasts the liquidation as an "adverse benefit determination" amenable to resolution under the administrative remedies section of the plan, it is clear that plaintiff could not have taken advantage of the administrative remedies since she did not learn of the distribution for nearly fifteen (15) months, long after the period of administrative appeal had expired.

### POINT THREE: PLAINTIFF WAS NOT REQUIRED TO EXHAUST HER ADMINISTRATIVE REMEDIES BECAUSE SUCH WOULD HAVE BEEN FUTILE

In the event that This Court holds that the administrative remedies of the Plan were available and applicable to the claims of plaintiff, Plaintiff maintains that use of such provisions would have been futile and, thus, were excused.

In **Harrow v. Prudential Insurance Company of America**, 279 F.3d 244 (3d.Cir. 2002), the Court held "[a] plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so. ...A Plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision [citation omitted]" Id at 249.

The issues raised in the case at bar, it is submitted, are far different than those contemplated by the administrative remedies section of the instant Plan. The language of that section of the Plan clearly applies to the scenario where an application for a benefit has been made and denied. In that instance, the applicant is aware of two things which plaintiff herein was not; 1) that there has been an adverse determination and 2) that the applicant's claimed benefits are still within the Plan's coffers.

In the case at bar, when the plaintiff became aware of the error of defendant, the benefit which she could have claimed, had she been informed, had already been liquidated. Clearly, at that point, it was "certain" that any administrative appeal would have been denied.