NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLEO VAN DOREN, formerly CLEO DOUGHERTY<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL RESEARCH AND MANAGEMENT COMPANY d/b/a AMERICAN FUNDS, TRADER JOE'S COMPANY, and PLAN COMMITTEE<br><br>Defendants. | Civ. Action No. 10-1425 (KSH)<br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction and Facts**

In this ERISA case, the defendants—Trader Joe's Company ("Trader Joe's"), the Plan Committee ("the Committee"), which is the administrator of the Trader Joe's Company Retirement Plan ("the Plan"), and Capital Research Management Company ("Capital Research"), which provides administrative services for the Plan—have moved to dismiss the plaintiff's claims for benefits under the plan and for breach of fiduciary duty.

For the purposes of the motion to dismiss, all of the following facts, as stated in the complaint, are accepted as true. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010). The plaintiff, Cleo Van Doren, ("Van Doren"), was formerly married to Timothy Dougherty ("Dougherty"), who had an account under the Plan. (Am. Compl.

1

¶¶ 2.)  As Dougherty's spouse, Van Doren was a beneficiary of the Plan; as of May 29, 2008, there was $173,980 in the account.  (*Id.*)

On May 29, 2008, Dougherty submitted a request for a distribution from the account, indicating—falsely—that he was unmarried.  (*Id.* ¶ 7.)  In response, Capital Research gave Dougherty withdrawal forms that provided information about the distribution, including the provision that a distribution to a married Plan participant must be by Qualified Joint Survivor Annuity unless the participant has obtained notarized spousal consent.  (*Id.* ¶ 8.)  The defendants then accepted and processed the distribution forms and distributed all of the account's assets to Dougherty based on the information he gave.  (*Id.* ¶¶ 7, 9.)  Van Doren was unaware of the distribution until late July 2009, when a Trader Joe's representative notified her.  (*Id.* ¶ 10.)

Van Doren filed her original complaint in state court on January 10, 2010.  [D.E. 1.] Trader Joe's and Capital Research separately removed to federal court, causing two cases to be opened.  The cases were consolidated [D.E. 6], and on April 23, 2010, plaintiff filed an amended complaint [D.E. 20].  Trader Joe's and the Committee then filed a joint motion to dismiss [D.E. 25], and Capital Research moved separately [D.E. 23].

**II. Discussion**

The amended complaint explicitly invokes 29 U.S.C. § 1132(a)(1)(B), under which a participant or beneficiary of an ERISA plan can bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  In pertinent part, Van Doren alleges that she was a beneficiary of the Plan and that half of Dougherty's account should have been distributed to her in the form of a joint survivor annuity.  (Compl. ¶¶ 1, 14.)  The complaint also impliedly invokes § 1132(a)(2), which allows actions for breach of fiduciary duty, and §

2

1132(a)(3), which allows actions for equitable relief to remedy statutory ERISA violations. Specifically, Van Doren alleges that the defendants were negligent and breached their fiduciary duties when they distributed the entirety of the account to Dougherty without ensuring that the distribution forms he submitted were accurate and without notifying Van Doren. (Compl. ¶¶ 12, 13.)

Capital Research argues that the claims against it should be dismissed because it is neither an administrator nor a fiduciary of the Plan and, therefore, cannot be held liable under ERISA. Trader Joe's and the Plan Committee argue that dismissal is proper because Van Doren failed to exhaust her administrative remedies, and because, insofar as Van Doren brings claims under §§ 1132(a)(2) and (a)(3), the damages she seeks are unavailable. For the reasons that follow, the Court finds that Capital Research is not a proper defendant. In addition, the Court finds that Van Doren has failed to exhaust her administrative remedies and cannot be excused from the exhaustion requirement.

### A. Whether Capital Research Is a Proper Defendant

#### 1. Is Capital Research a Plan Administrator for Purposes of § 1132(a)(1)(B)?

Under § 1132(a)(1)(B), a participant or beneficiary of an ERISA plan can bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In such an action, "the defendant is the plan itself (or plan administrators in their official capacities only)." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007). "Exercising control over the administration of benefits is the defining feature of the proper defendant . . . ." *Evans v. Employee Benefit Plan*, 311 F. App'x 556, 558 (3d Cir. 2009). Where a plan administrator retains the discretion to decide disputes, a third-party service provider will not be deemed a

fiduciary of the plan and will not be subject to a suit under § 1132(a)(1)(B). *Terry v. Bayer Corp.*, 145 F.3d 28, 35 (1st Cir. 1998) (citing *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008-09 (4th Cir.1996); *Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.*, 57 F.3d 608, 613-14 (7th Cir.1995); *Kyle Rys., Inc. v. Pac. Admin. Servs., Inc.*, 990 F.2d 513, 516 (9th Cir.1993); *Baker v. Big Star Div. of The Grand Union Co.*, 893 F.2d 288, 289-90 (11th Cir.1989)).

Two cases from other circuits provide guidance. In *Me. Coast Mem'l Hosp. v. Sargent*, 369 F. Supp. 2d 61, 64 (D. Me. 2005), a hospital sued a patient for unpaid bills, and the patient filed a third-party claim for benefits against her employer and the insurer that she claimed was her health plan's administrator. The court determined that the insurer was not a proper defendant because the health plan documents did not name it as the plan administrator, and even though the insurer approved coverage for certain claims, it nevertheless did not control administration of the plan. *Id.* In *Seabrooke v Arch Commc'ns. Group, Inc.*, 2003 WL 21434915, at *1 (D.N.H. June 20, 2003), the plaintiff sued to obtain benefits from her employer and the insurance company that provided administrative services for the employer's health plan. The court found that the insurer was not a proper defendant because the employer, and not the insurer, was named as the plan administrator in the plan's documentation, and even though the insurer made initial determinations about whether to grant or deny claims, the ultimate responsibility for each claim rested with the employer. *Id.* at *3.

This case is similar to the two mentioned above. First, the Plan states that the administrator of the plan is "a Committee, appointed by the Board," and it vests all authority and discretion to administer the plan to the Plan Committee. (Trader Joe's Company Retirement Plan §§ 11.1-11.2, attached to Trotter Decl. as Ex. A.) In addition, the

4

administrative services agreement between Trader Joe's and Capital Research[1] states that Capital Research has no "power or discretion in the administration of the Plan or in the handling of any Plan assets," and specifically bars it from, among other things, interpreting Plan provisions and determining eligibility. (Recordkeeping and Administrative Services Agreement §V, attached to Mot. to Dismiss as Ex. B.) The administrative services agreement also limits Capital Research to performing the following services, as stated in Van Doren's complaint: "preparation of certified copy of the trust statement," "processing participant withdrawals at the employer's direction," "preparation of Form 1099R, and withholding tax remittance and reporting," "preparation and maintenance of participant loan documents and processing of loan distribution," "processing name, address, and other indicative data changes submitted by the employer," "maintenance of amounts eligible for participant loans and/or hardship withdrawals," and "maintaining beneficiary information." (Ex. A to Recordkeeping and Administrative Services Agreement.)

Both of these documents support a finding that Capital Research is not an administrator of the Plan, and none of the factual allegations in the complaint sufficiently allege that the opposite is true. In paragraph 3 of the complaint, Van Doren alleges that "the account was being serviced and/or administered by Defendant, Trader Joe's and/or by defendant, Plan Committee, and/or by defendant, Capital Research and Management Company . . . ." Paragraphs 4 and 5 discuss the services Capital Research is required to provide. Paragraph 8 states that Capital Research provided withdrawal forms to Dougherty. These allegations do not suffice to withstand a motion to dismiss. The statement that "the account was being serviced or

---

[1] The Plan and administrative services agreement can be considered by the Court without converting the Motion to Dismiss to a Motion for Summary Judgment because they are integral to and explicitly relied on in Van Doren's complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

5

administered by . . . Capital Research" is conclusory, and paragraphs 4, 5 and 8 all describe ministerial tasks. Because Trader Joe's retained the discretion to decide disputes, and Capital Research merely provided third-party services, Capital Research is not an administrator of the plan.

*2. Is Capital Research a Fiduciary for Purposes of §§ 1132(a)(2) and 1132(a)(3)?*

In addition to providing for recovery against the plan, ERISA also allows a party to sue the fiduciary of a plan for breach of fiduciary duty. *See Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir. 1985). ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "[T]he linchpin of fiduciary status under ERISA is discretion." *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994). The question, then, is whether Capital Research "maintained any authority or control over the management of the plan's assets, management of the plan in general, or maintained any responsibility over the administration of the plan." *Id.*

In *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 39 (3d Cir. 1991), the Third Circuit affirmed a grant of summary judgment in favor of a "plan supervisor," which performed only administrative tasks, on the grounds that it had no discretion and denied the claim in question on the basis of its obligation under the written plan instrument. To the contrary, in *Bd. of Trs. of Bricklayers and Allied Craftsmen v Wettlin Assoc., Inc.*, 237 F.3d 270, 275 (3d Cir. 2001), the Third Circuit held that an action against a company that provided administrative services

for a union welfare fund should survive a motion to dismiss. The complaint in that case alleged the company had "the day to day responsibility to control, manage, hold, safeguard, and account for the Fund's assets and income," and the court stressed that "the contract provides that [the company] is to 'receive requests for benefits from employees and take appropriate action thereon.'" *Id.* at 275. Van Doren's invocation of *Wettlin* exposes the shortcomings of her complaint. She argues that the same four paragraphs that purport to allege that Capital Research is the plan administrator—paragraphs 3, 4, 5, and 8—are sufficient to allege that Capital Research is a fiduciary. As noted above, paragraph 3 is conclusory, and the tasks outlined in paragraphs 4, 5, and 8 are more akin to those in *Confer* than those in *Wettlin*. As opposed to the complaint in *Wettlin*, Van Doren's complaint does not allege that Capital Research had any control over the plan's assets; preparing documents, processing data, and distributing forms are not the kind of discretionary task encountered in that case or in *Confer*.

The duty to "process[] participant withdrawals at the employer's direction" gets closer to the mark, but the fact that such a task is to be performed at Trader Joe's direction defeats the notion of discretion on the part of Capital Research. Also, the contractual language presents a circumscribed set of responsibilities, in contrast to the broad language of the contract in *Wettlin*. Indeed, the administrative services agreement specifically states that Capital Research's "responsibilities shall be limited to those specifically listed" in the exhibits attached to the agreement and that "[n]othing in the Agreement will be deemed to impose any obligation on the Service Provider to monitor, control, or in any way exercise any powers or discretion in the administration of the Plan or in the handling of any Plan assets, including but not limited to the selection, the acquisition or disposition of any funds, securities or other assets of the Plan." While it is true that the ERISA definition of "fiduciary" is functional rather than formal, *In re*

*Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)), Van Doren has alleged no facts to gainsay the language of the contract.

Finally, Capital Research notes a Department of Labor interpretive bulletin that listed the types of responsibilities that should lead to a finding that a person is *not* a fiduciary under ERISA: (1) application of rules determining eligibility for participation or benefits; (2) calculation of services and compensation credits for benefits; (3) preparation of employee communications material; (4) maintenance of participants' service and employment records; (5) preparation of reports required by government agencies; (6) calculation of benefits; (7) orientation of new participants and advising participants of their rights and options under the plan; (8) collection of contributions and application of contributions as provided in the plan; (9) preparation of reports concerning participants' benefits; (10) processing of claims; and (11) making recommendations to others for decisions with respect to plan administration. 29 C.F.R. § 2509.75-8 (1992) (D-2). As an agency interpretation made pursuant to informal procedures, these regulations are entitled to deference to the extent that they have the power to persuade. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944*)*; *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991). In this case, the duties possessed by Capital Research closely track those listed by the Department of Labor; indeed, the Department's list arguably allows administrative service providers more authority than Trader Joe's affords Capital Research. Van Doren provides no response to blunt the bulletin's persuasive effect.

In sum, the complaint is dismissed as to Capital Research because it is neither an administrator nor a fiduciary of the Plan and, thus, is not subject to suit under ERISA.

**B. Whether Van Doren Exhausted Administrative Remedies**

Van Doren brought this action under § 1132(a)(1)(B) to obtain half of the value of her former husband's Plan account, and her complaint also impliedly invokes §§ 1132(a)(2) and (a)(3). Generally, a plan participant or beneficiary bringing an action under § 1132(a)(1)(B) to enforce the terms of an ERISA plan must exhaust her administrative remedies prior to seeking judicial relief. *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (1990). Under Third Circuit precedent, exhaustion is not required where the participant or beneficiary seeks to "assert rights established by the ERISA statute" (*i.e.*, an 1132(a)(3) claim). *D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d Cir. 2002) (citing *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir.1986)). Likewise, "[t]rue fiduciary duty claims pursuant to 29 U.S.C. 1132(a)(2) do not require administrative exhaustion under ERISA." *Shadow v. Cont'l Airlines, Inc.*, 2006 WL 3691037, at *7 (W.D. Tex. 2006) (citing *Milofsky v. Am. Airlines, Inc.*, 442 F.3d 311, 313 (5th Cir.2006) (en banc)); *see also Engers v. AT&T*, 428 F. Supp. 2d 213, 230 (D.N.J. 2006) ("The rationale behind this exception is that a claim involving a breach of fiduciary duty involves no administrative expertise and thus exhaustion serves no real purpose." (citing *Zipf*, 799 F.2d at 892–93)). However, a plaintiff cannot evade the exhaustion requirement by bringing a statutory claim that "merely recasts [a] benefits claim in statutory terms," *D'Amico*, 297 F.3d at 291 n.3, or "by artfully pleading benefit claims as breach of fiduciary duty claims." *Engers*, 428 F. Supp. 2d at 230. "[A]lleged fiduciary breaches involve a claim for benefits when 'resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretation and application of ERISA' itself." *D'Amico*, 297 F.3d at 291 (quoting *Harrow v. Prudential Ins. Co.*, 279 F.3d 244, 253–54 (3d Cir. 2002).

In this case, the analysis is straightforward. Van Doren's complaint states that she seeks damages, which she describes as "the value of her 50% joint and survivor annuity and/or the

9

equitable distribution share of the account value." (Compl. ¶ 14.) Determining the value of the annuity or equitable distribution share Van Doren claims she is entitled to requires resort to the terms of the plan. Therefore, Van Doren's purported claims under 1132(a)(2) and (a)(3) are in fact claims for benefits; to avoid dismissal, she must have exhausted her administrative remedies or establish that exhaustion is excused in this situation.

Van Doren argues that exhaustion is not required based on futility. She claims that it would have been futile for her to pursue administrative remedies because by the time she found out that Dougherty had drained the account, there was nothing left in the account to claim. Failure to exhaust may be excusable where exhaustion would be futile; the inquiry is a fact-specific one. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007). To escape the exhaustion requirement, the plaintiff must make a "clear and positive showing of futility." *Harrow*, 279 F.3d at 249 (quoting *Brown v. Cont'l Baking Co.*, 891 F. Supp. 238, 241 (E.D.Pa.1995)). A pair of cases in the Second Circuit held that exhaustion was not futile where the plaintiffs failed to even notify their plan's administrator of a disputed claim. *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993); *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133–34 (2d Cir. 2001). In *Davenport*, the Court stated that informal correspondence could not substitute for a formal submission and administrative decision. *Id.*

Here, the Plan has a well defined claim procedure. (Trader Joe's Company Retirement Plan, Art. XIII, attached to Trotter Decl. as Ex. A.) The Plan dictates that a claimant must make a written application for benefits, and that the Plan Committee must notify the claimant of an adverse decision within 90 days. (*Id.*) The claimant has 60 days to request further review by the Committee, and the Committee has an additional 60 days to complete this review. (*Id.*) In this case, despite the existence of a detailed claim procedure, Van Doren has not alleged that she

made any efforts to obtain the benefits purportedly due to her. She has not even alleged any informal contact with any of the defendants. Rather, she argues that by the time she learned of the distribution to Dougherty, the period of administrative appeal had expired. She also argues that in any event, the administrative appeals process only applies to situations where a person attempts to withdraw from their account and is denied, and because she made no such claim, the administrative process was never triggered.

Van Doren's argument that the time to make a claim had expired is unavailing. The claim procedure places no limit on when a claimant must file her initial claim; the only timing requirements relate to later stages of the process. By her own admission, Van Doren never made an initial claim, so no time limit was ever triggered. Van Doren's argument that the claim procedure does not apply to her is also misguided. The claim procedure states that "[t]he claimant shall make a written application for benefits under the Plan," and states that the Committee may make an "adverse benefit determination on the claim." This broad language belies the narrow interpretation Van Doren seeks to give it. Van Doren believed she was entitled to benefits under the plan; therefore, the proper course of action was to make a claim for those benefits.

The Third Circuit succinctly stated the rationale for the exhaustion requirement in *Metro. Life*:

> [R]equiring exhaustion of plan remedies helps to "reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claim settlement; and to minimize the costs of claims settlement for all concerned." *Harrow*, 279 F.3d at 249. In addition, exhaustion enhances the ability of fiduciaries "to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes." *Id.* It also has the salutary effect of "refining and defining the problem" for final judicial resolution. *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)."

501 F.3d at 279 (some internal citations and quotation marks omitted).

More broadly, courts have had occasion to ponder the judge's role in ERISA cases when determining the appropriate standard by which to review the decisions of ERISA plan administrators.  *See, e.g.*, *Brogan v. Holland*, 105 F.3d 158 (4th Cir. 1997); *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783 (4th Cir. 1995); *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429 (9th Cir. 1993); *Beckstrand v. Elec. Arts Group Long Term Disability Ins. Plan*, 2007 WL 1599769 (E.D. Cal. June 4, 2007); *Chapman v. Prudential Life Ins. Co. of Am.*, 267 F. Supp. 2d 569 (E.D. La. 2003); *Fahringer v. Paul Revere Ins. Co.*, 317 F. Supp. 2d 504 (D.N.J. 2003).  In the Third Circuit, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Fahringer*, 317 F. Supp. 2d at 509 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Where the plan grants such discretion, a district court employs an arbitrary and capricious standard, granting the administrator deference.  *Id.* (citing *Nazay v. Miller*, 949 F.2d 1323, 1334 (3d Cir. 1991)).  The reason for such deference, which applies in other circuits as it does in ours, is that the designated fiduciaries of a plan, and not the federal courts, should be tasked with administering the plan.  *Bernstein*, 70 F.3d at 788.  The administrative responsibility for a plan must rest "with those whose experience is daily and continual, not with judges whose exposure is episodic and occasional."  *Brogan*, 105 F.3d at 164 (quoting *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1006 (4th Cir.1985)).  Indeed, federal judges cannot "be the monitors of every administrative act or every arguable interpretation of an ERISA trust," and cannot "substitute their discretion for the faithful exercise of discretion by those entrusted with those tasks."  *Clark*, 8 F.3d at 1432.

While a court's *de novo* review is much more expansive, *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184–85 (1991) (holding that on *de novo* review, court is not limited to evidence in the administrative record), the case at bar is not one in which *de novo* review would be warranted. The plan document here grants the Plan Committee "full power and discretion" to control the Plan, so any review must be limited to the administrative record. Yet there is no administrative record because Van Doren never filed a claim; allowing this action to proceed without a record would lead the Court to overstep its circumscribed function.[2] The problem underlying Van Doren's claims would have no definition, and the process of defining it would risk premature judicial intervention in the Plan Committee's decision-making and needless expenditures by both sides.

In light of the foregoing, Van Doren cannot bypass the administrative process and seek judicial relief; as a result, the motion to dismiss is granted. An appropriate order will be entered.

Dated: December 30, 2010                              /s/ Katharine S. Hayden
                                                      Katharine S. Hayden, U.S.D.J.

---

[2] As a practical matter, the record is silent about plaintiff's entitlement to any portion of the benefit, which is a spousal asset subject to distribution upon a divorce. Van Doren provides no information about how the marital property was divided between her and Dougherty.